STATE OF CONNECTICUT *v.* LARRY HOLLOMAN
(7164)

O'CONNELL, NORCOTT and FOTI, Js.

Argued October 11, 1989—decision released January 23, 1990

*Mark Rademacher,* for the appellant (defendant).

*Vincent J. Dooley,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Roland Fasano,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 and assault of a victim sixty or older in the first degree in violation of General Statutes § 53a-59a. The defendant was found not guilty of stealing a firearm in violation of General Statutes § 53a-212.[1] The defendant claims that the court erred in denying his motion to suppress evidence and in excluding evidence that a third party may have committed the crime. We find no error.

At the hearing on the suppression motion, the court found the following facts. On February 14, 1987, a black male, approximately 6 feet 2 inches tall, medium build, wearing a three-quarter length green army jacket and a navy blue knit cap, entered a liquor store in West Haven and asked for a bottle of Wild Irish Rose wine. As the elderly store clerk turned to the cooler, the robber brandished a hunting knife and demanded money. The robber stabbed the clerk in the abdomen, causing serious injury. The robber then dragged the clerk to the back of the store, forced him into a restroom and took his wallet. He then pushed the restroom door closed with his foot, leaving a bloody sneaker print behind. The robber left, taking with him $300, a Colt .38 caliber revolver and a bottle of rum. Upon leaving the store, he got into the passenger seat of an old dirty brown automobile variously described as a Datsun, Toyota or Austin-Marina.

---

[1] The defendant was also charged with assault in the first degree in violation of General Statutes § 53a-59. While allowing prosecution for both assault in the first degree and assault in the first degree of a victim sixty or over, § 53a-59a prohibits conviction of both crimes for the same incident.

The owner of an appliance store less than a mile from the liquor store heard news accounts of the robbery, including the descriptions of the robber and the getaway car. He remembered that on two occasions prior to the robbery, two men trying to sell him a used air conditioner came to his store in an automobile that he thought matched the description of the one involved in the robbery. In addition, he recalled that one of the men was tall, black, and wore a long green army jacket. On February 16, 1987, the same two men returned to the appliance store in a white Chevrolet Blazer. The store owner took the air conditioner from them, and while he was helping them bring the appliance into the store, he noted the Blazer's Vermont license plate number. Later, he telephoned one of the men, who was eventually charged in connection with the liquor store robbery, to complain that the air conditioner did not work and to arrange for the men to take the appliance back. The store owner then called the police, and four officers were assigned to stake out the appliance store to await the men's return. In the meantime, the police checked the Vermont registration number and learned that it was not issued for the Blazer.

The two men arrived at the appliance store in the Blazer and retrieved the air conditioner. As they started to drive away, police officers pulled them over to the side of the road. The men were ordered out of the car, at which point the officers observed that the ignition had been "popped," leading them to believe that the car was stolen. The alleged accomplice, who was driving the vehicle, admitted to the officers that his driver's license was under suspension. While retrieving the title and registration of the car from the glove compartment, one officer noticed a green army jacket with blood stains in the right cuff area and empty bottles of Wild Irish Rose wine in the rear of the vehicle.

The officer also noticed that the defendant, who was a passenger, fit the general description of the liquor store robber.

The two men were then transported to the West Haven police department where the alleged accomplice gave a statement. He said that he owned an Austin-Marina automobile in which he had driven the defendant to the scene of the robbery, and that it was the defendant who entered the liquor store and committed the actual robbery and assault. Thereafter, the defendant was formally placed under arrest for the liquor store robbery and the assault. During the booking process, officers seized the defendant's pants and sneakers, which appeared to be bloodstained.

## I

The first claim of error concerns the denial of the defendant's motion to suppress his pants and sneakers, which were seized without a warrant.[2] Relying on *Wong Sun* v. *United States,* 371 U.S. 471, 484–86, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), the defendant claims that this evidence is the tainted fruit of an illegal arrest. He argues that the arresting officers stopped the car without probable cause to arrest him for the liquor store robbery, that they illegally arrested him before discovering evidence linking him to the robbery and, therefore, that any evidence seized was the result of an unlawful arrest. We disagree.

The police may momentarily detain a person for investigative purposes if they have a reasonable and articulable suspicion that he has engaged in criminal activity. *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Marino,* 17 Conn. App.

---

[2] The defendant made two motions to suppress evidence, one pertaining to items seized without a warrant and one pertaining to items seized with a warrant. This appeal relates only to the warrantless seizure.

677, 682, 555 A.2d 455, cert. denied, 211 Conn. 803, 559 A.2d 1138 (1989). In light of the officers' knowledge that the Vermont license plate did not belong on the Blazer, there was probable cause to believe that the driver was violating the motor vehicle statute prohibiting misuse of plates.[3] General Statutes § 14-147 (c).

Moreover, the officers reasonably suspected that the two men were in possession of a stolen car, on the basis of their knowledge that the Vermont license plate on the vehicle was registered to a different vehicle. They were therefore justified in stopping the vehicle to investigate whether or not it was stolen. See *State* v. *Millett,* 8 Conn. App. 467, 513 A.2d 191, cert. denied, 201 Conn. 809, 516 A.2d 886 (1986).

Finally, on the basis of the tip they had received from the appliance store owner, the officers reasonably suspected that the two men in the car had committed the liquor store robbery. Reasonable cause for a stop can be based on information supplied by a third party even though the informant's unverified tip may not supply probable cause for the issuance of an arrest warrant. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams* v. *Williams,* 407 U.S. 143, 145, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). Hence, the stop was a justifiable part of the police investigation of the liquor store robbery.

---

[3] In *State* v. *Dukes,* 209 Conn. 98, 122, 547 A.2d 10 (1988), the court held that after stopping an automobile for a traffic infraction police may require the occupants to exit the vehicle. In this case, the apparent motor vehicle violation was not an infraction, but a misdemeanor with a possible maximum penalty of a $100 fine or thirty days imprisonment or both. General Statutes § 14-147 (c). A fortiori, the officers were justified in ordering the occupants out of the vehicle.

The officers did not immediately arrest the two men; rather, they subjected the men to a reasonable investigatory stop. See *State* v. *Bowden,* 15 Conn. App. 539, 542–46, 545 A.2d 591, cert. denied, 209 Conn. 810, 548 A.2d 438 (1988). The defendant argues to the contrary, that the men were immediately arrested and that the officers' explanations of why they stopped the Blazer were merely pretextual. He contends that he was arrested when the police stopped the Blazer because the officers had their revolvers drawn when they ordered the occupants out of the car. The officers, however, were aware that an armed robbery in which a handgun was stolen had recently occurred in the neighborhood. "A police officer ' "need not defer . . . protective measures to the point of peril." ' " *State* v. *Escobales,* 16 Conn. App. 272, 275, 547 A.2d 553, cert. denied, 209 Conn. 827, 552 A.2d 434 (1988), cert. denied, 490 U.S. 1023, 109 S. Ct. 1753, 104 L. Ed. 2d 189 (1989), citing *United States* v. *Coates,* 495 F.2d 160, 165 (D.C. Cir. 1974). Furthermore, the mere fact that the stopping officers had their guns drawn did not automatically convert the *Terry* stop into an arrest. *United States* v. *Nargi,* 732 F.2d 1102, 1106 (2d Cir. 1984); *State* v. *Wylie,* 10 Conn. App. 683, 687–88, 525 A.2d 528, cert. denied, 204 Conn. 807, 528 A.2d 1154 (1987).

The defendant concedes that, as a passenger without an ownership interest in the Blazer, he did not have an expectation of privacy in the interior of the vehicle, and accordingly lacks standing to challenge the legality of the manner in which the officers obtained incriminating evidence from the vehicle immediately after the stop. *State* v. *Marino,* supra, 684. Thus, the court did not err in not suppressing the three-quarter length army jacket with bloodstains on one sleeve and the empty bottles of Wild Irish Rose wine that were in the rear of the Blazer.

After discovering the incriminating items, the officers took the defendant and the accomplice into custody without informing them that they were under arrest, and brought them to the West Haven police station. Because the officers discovered evidence that further aroused their suspicions, they were justified in prolonging the stop and expanding their investigation at the scene. *State* v. *Aversa,* 197 Conn. 685, 692, 501 A.2d 370 (1985). A person temporarily detained by police for investigation at a *Terry* stop, however, cannot be transported to police headquarters for further investigation unless at the time he is taken from the scene of the stop there is probable cause to believe that he has committed a crime. *Dunaway* v. *New York,* 442 U.S. 200, 211–16, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979). In the present case, therefore, the defendant was arrested when he was taken from the scene of the stop to police headquarters. Thus, the question is whether there was probable cause for arrest at that time.

The officers had probable cause to arrest the defendant once they discovered the items in the back of the Blazer. General Statutes § 54-1f (b) provides that a police officer may arrest, without a warrant, "any person who the officer has reasonable grounds to believe has committed or is committing a felony." The term "reasonable grounds," within the meaning of § 54-1f (b), has been interpreted to mean "probable cause," as that term has been defined by judicial opinion. *State* v. *Dennis,* 189 Conn. 429, 431, 456 A.2d 333 (1983). Probable cause to arrest exists when "(1) there is probable cause to believe a crime has been committed; and (2) there is probable cause to believe that the person to be arrested committed that crime." *State* v. *DeChamplain,* 179 Conn. 522, 529, 427 A.2d 1338 (1980). " ' "The quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substan-

tially less than that required for conviction. Our cases have made clear that '[t]here is often a fine line between mere suspicion and probable cause, and "[t]hat line necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." ' " ' " *State* v. *Magnotti,* 198 Conn. 209, 213, 502 A.2d 404 (1985).

The facts and circumstances known to the investigating officers provided them with reasonable ground to believe that the defendant had committed the robbery. See *State* v. *McNellis,* 15 Conn. App. 416, 423, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). The owner of the appliance store called the police and reported that two men, one of whom fit the description that he had heard on the local news of the liquor store robber, had tried to sell him a used air conditioner, and that he had asked them to return later in the day. When the men returned in the car the store owner had described, the police noticed that the passenger in the vehicle was a large black male, similar to the liquor store robber. Although the officers did not have probable cause to arrest at that time, they had an abundance of legitimate reasons to pull the vehicle over for further investigation. The observation of the bloodstained army jacket and the empty bottles of Wild Irish Rose wine, together with the fact that the defendant matched the description of the robber, gave the officers probable cause to believe it was the defendant who had robbed the liquor store. *State* v. *Carter,* 189 Conn. 611, 619, 458 A.2d 369 (1983).

Because the arrest of the defendant was supported by probable cause, the officers could lawfully engage in a follow-up search of the defendant at the police station; "searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention." *United States* v. *Edwards,* 415 U.S. 800, 804, 94 S. Ct.

1234, 39 L. Ed. 2d 771 (1974); *State* v. *Magnotti,* supra, 214. In the present case, as in *United States* v. *Edwards,* supra, the police took articles of clothing from the suspect during detention at the police station. See also *State* v. *Copeland,* 205 Conn. 201, 208–13, 530 A.2d 603 (1987); *State* v. *Kaplan,* 20 Conn. App. 183, 185–86, 565 A.2d 11 (1989).

We find no error in the trial court's denial of the defendant's motion to suppress the evidence that the officers had obtained without a search and seizure warrant.

## II

The defendant next claims that the trial court erred in excluding evidence proffered to establish that a third party had committed the crimes with which he was charged. The defendant offered evidence that the accomplice and the third party were friends and lived in the same building, that the third party knew that the accomplice's Austin-Marina could be operated without a key, that the accomplice was aware that people used his car without his permission, that the accomplice was not driving his Austin-Marina on the day of the robbery, and that he had left it at his residence. In an offer of proof out of the jury's presence, the defendant maintained that the third party's physical description matched the description of the robber given by eyewitnesses to the crime. The court excluded the third party's physical description from evidence.

A defendant may introduce evidence that a third party, and not the defendant, committed the crime with which the defendant is charged; *State* v. *Echols,* 203 Conn. 385, 392, 524 A.2d 1143 (1987); "as long as there is some evidence which directly connects the third party with the crime." *Siemon* v. *Stoughton,* 184 Conn. 547, 555, 440 A.2d 210 (1981); *State* v. *John,* 210 Conn. 652,

670, 557 A.2d 93, cert. denied, U.S. , 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989). It is not sufficient, however, if the testimony merely affords a possible suspicion against another person. *State* v. *Watkins,* 14 Conn. App. 67, 73, 540 A.2d 76, cert. denied, 208 Conn. 804, 545 A.2d 1102 (1988). In the present case, there was a total absence of any connection between the third party and the crime. Until such a connection was established, the third party's physical description was not relevant, and the trial court did not abuse its discretion in excluding it.

There is no error.

In this opinion the other judges concurred.