STATE OF CONNECTICUT *v.* HERIBERTO BERRIOS
(8160)

SPALLONE, LAVERY and CRETELLA, Js.

Argued October 30—decision released December 4, 1990

*Terry Sablone,* with whom, on the brief, was *Jeremiah Donovan,* special public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Linda Howe,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crime of possession of heroin with intent to sell in violation of General Statutes § 21a-277 (a). On appeal, the defendant claims (1) that the prosecutor's opening argument, coupled with the trial court's instructions to the jury, deprived him of a fair and unbiased jury, and (2) that the trial court erroneously denied his motion to suppress evidence seized as a result of a search incident to his arrest. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On May 2, 1988, at about 10:30 p.m., Officers Richard Herlihy and John Losak of the Bridgeport police department were on patrol to detect drug transactions in the area of Father Panik Village. Herlihy observed the defendant and a female standing together. The defendant held out in his hand a pink and white envelope which Herlihy recognized as a type commonly used in the packaging of narcotics. The female had in her hand what appeared to be paper currency. When the defendant saw Herlihy approaching, he ran into a nearby building. Herlihy gave chase and apprehended the defendant in a hallway. While another officer

detained the defendant, Herlihy looked on the ground where the defendant had been standing. Herlihy found a bundle of white and pink envelopes, similar to the one that he had seen the defendant holding, on the ground about five feet from the defendant. He picked them up and arrested the defendant. At the police station, Losak conducted a custodial search of the defendant which resulted in the discovery of $22 in currency. The white and pink envelopes were inventoried and later tests revealed that they contained heroin.

At trial, the assistant state's attorney began her opening argument to the jury as follows: "What we have here is a situation that, unfortunately, [is] all too common in the city of Bridgeport and it's a situation that's a pretty serious one in terms of how it's affecting our society, namely, an individual who is at a location engaged in—or about to engage in activity that is ruining our society."

Upon objection by the defense, the court admonished the jury that "[i]n this argument we're only concerned with the innocence or guilt of this defendant. We're not concerned with what goes on in society. . . . What goes on in society that's been brought out here you can consider but that's it, as long as it pertains to this gentleman's innocence or guilt. . . ."

After telling the jury to evaluate carefully all the evidence and to render a verdict of not guilty if the facts and law so require, the trial court stated:

"The state of Connecticut and its people, on the other hand, look to you as the sworn officers of this court to deal with this case fairly and firmly and honestly as strong-minded men and women with the interest placed in your hands as an arm of the court to aid and uphold the law of the land by rendering a verdict of guilty if the facts and the law require such a verdict. The state

does not desire the conviction of innocent people or of any person whose guilt upon the evidence is in the realm of reasonable doubt. The state is as much concerned in having the innocent person acquitted as having a guilty person punished, but for the safety and well being for the citizens of the state and for the protection of life and property the state is concerned in securing the convictions of persons who have been proven by the evidence to have been found guilty of committing crimes beyond a reasonable doubt." Upon deliberation, the jury returned a guilty verdict.

The defendant first claims that the prosecutor's remarks, coupled with the trial court's instructions, invited the jury to participate in "ameliorating society's woes" and therefore "encourage[d] the jury to convict the defendant not only for what he had done," but for what others had done. This claim is without merit. A fair reading of the entire charge in the context of the state's attorney's remarks fails to reveal an intentional pattern of misconduct calculated to infringe upon the defendant's right to a fair trial. See, e.g., *State* v. *Williams,* 204 Conn. 523, 540, 529 A.2d 653 (1987); *State* v. *Hawthorne,* 176 Conn. 367, 372, 407 A.2d 1001 (1978); *State* v. *Wilson-Bey,* 21 Conn. App. 162, 171, 572 A.2d 372, cert. denied, 215 Conn. 806, 576 A.2d 537 (1990).

The defendant's second claim is that the trial court improperly denied his motion to suppress $22 in currency found in his possession during a search conducted incident to his arrest. The defendant claims that the arrest was illegal because it was undertaken without probable cause, that the stationhouse search was a result of the illegal arrest, and that the evidence found by that search, i.e., the $22 in currency, should have been excluded as "fruits" of the illegal arrest. We disagree. Our review of the record, transcripts and briefs

establishes that there was ample probable cause for the arrest of the defendant and that the custodial search performed at the police station was legal. See, e.g., *State* v. *Magnotti,* 198 Conn. 209, 213–14, 502 A.2d 404 (1985); *State* v. *Holloman,* 20 Conn. App. 521, 527–28, 568 A.2d 1052, cert. denied, 214 Conn. 805, 573 A.2d 317 (1990).

The defendant was neither deprived of a fair trial nor was the custodial search of his person illegal.

The judgment is affirmed.

In this opinion the other judges concurred.