67 P.3d 1283

STATE of Idaho, Plaintiff–Respondent,

v.

Gregory Paul KERCHUSKY, Defendant–Appellant.

No. 27998.

Court of Appeals of Idaho.

April 22, 2003.

Review Denied Aug. 27, 2003.

Molly J. Huskey, State Appellate Public Defender; Sara B. Thomas, Deputy Appellate Public Defender, Boise, for appellant. Sara B. Thomas argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Chief Judge.

This is an appeal from a judgment of conviction for robbery. Gregory Kerchusky claims that the district court committed fundamental error at trial by admitting evidence of Kerchusky's silence prior to his arrest and prior to *Miranda*[1] warnings, that the court erred by excluding defense evidence that two other persons had access to a wig like the one worn by the robber, and that the sentence imposed was excessive.

## I.

## BACKGROUND

Kerchusky was charged with robbery, Idaho Code § 18-6501. The evidence presented at trial showed that on August 22, 2000, at approximately 4:30 p.m., a man approached a teller at the U.S. Bank branch in Boise. The man was wearing black sunglasses or safety glasses, a black wig, a blue shirt, a baseball cap, jeans, and a fanny pack. He was described as a white male, age thirty to thirty-five, and of average height and build. The man handed the teller a note demanding money and referring to a gun. The teller gave the man bills with a total value of $507.

At approximately the same time, fourteen-year-old Josh Piper, who lived next to the bank, saw a man with a wig and sunglasses run through Piper's yard and hop over a brick wall into a neighbor's yard. As Piper watched, the man went behind a dumpster, pulled off his jacket or shirt, pants, wig, and glasses, and threw them in the dumpster. Piper then saw the man run toward Quinn's

Lounge, a nearby tavern. When Piper later saw police responding to the bank robbery, he told one of the officers what he had seen.

Within the same time frame, Kerchusky entered Quinn's Lounge. Kerchusky bought drinks for himself and an acquaintance and then left Quinn's to buy cigarettes. As he left, he was confronted by two police officers who detained him. Kerchusky did not ask why he was being detained, nor did he respond when told that he matched the description of a person who had robbed a bank.

Piper was then brought to the scene and asked if he recognized Kerchusky as the man who had run through his yard, but Piper could not make an identification. Piper said that Kerchusky's clothing was unlike that which he had seen on the man, but he also observed that Kerchusky's build, height, and hair length matched the man he had seen. A bank employee was also brought to the scene and said that she recognized Kerchusky as the robber by his mannerisms, his profile, and his boots.

Kerchusky was then arrested and searched incident to the arrest. The money found in his wallet and in a pouch he carried, together with the sum he had spent on drinks at Quinn's Lounge, totaled $507, the precise amount stolen from the bank. Police found a wig, gloves, glasses, and a baseball cap in the dumpster where Piper had seen them being discarded. Police also saw a boot print near the dumpster with tread similar to the boots Kerchusky was wearing at the time of his arrest. During a subsequent search of Kerchusky's bedroom, police found black nylon hair which matched that in the wig found in the dumpster. Kerchusky's former roommate testified that, until just prior to the robbery, his daughter had possessed a wig like the one left in the dumpster.

At Kerchusky's trial, witnesses testified that Kerchusky had regularly worn a baseball cap like the one retrieved from the dumpster. However, testing of fabric from the cap showed that the "major contributor" of DNA found on the cap was not Kerchusky, and the test did not yield a DNA profile from

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

a second person who was deemed a "minor contributor" to the DNA on the fabric.

Defense evidence included the testimony of Kerchusky's brother, who said that during the month of August 2000, he had paid Kerchusky approximately $1,200 for doing yard work, including approximately $400 paid the day before the robbery.

Kerchusky also sought to introduce evidence that during the month of August 2000, two men stayed in Kerchusky's apartment and therefore had access to the child's wig, and that one of the men was similar in appearance to Piper's description of the man who removed items of clothing behind the dumpster. The district court excluded the evidence, concluding that the offered evidence would do no more than raise a "mere suspicion" that one of the two men who stayed at the apartment committed the crime.

The jury found Kerchusky guilty, and the district court sentenced Kerchusky to a unified term of fifteen years with six years determinate. Kerchusky filed a motion for reduction of sentence, which the district court denied. Kerchusky appeals, asserting that there were errors in evidentiary rulings at his trial and that his sentence is excessive.

## II.

## ANALYSIS

### A. Exclusion of Evidence of Alternative Perpetrator

Kerchusky first argues that the district court erred by excluding his proffered evidence of alternative perpetrators, the men who had stayed at Kerchusky's apartment during the month of the robbery and who therefore had access to the wig belonging to the daughter of Kerchusky's roommate.

The district court excluded the evidence based on the "direct connection" doctrine expressed by the Idaho Supreme Court in *State v. Larsen*, 91 Idaho 42, 415 P.2d 685 (1966). In *Larsen*, the defendant, who was on trial for murder, wanted to introduce evidence about another man who had been in-

vestigated in connection with the crime. This evidence, which was excluded by the trial court, would have shown that bloodstains were found on the back seat of this former suspect's car and on a spare tire in the trunk. The former suspect had claimed that the stains were hamburger blood, but tests revealed that they were human blood. The car had been in the vicinity on the day of the murder and on several days thereafter. The defendant's proffer included evidence that the former suspect had engaged in sexual relations with the deceased. The deceased had told a schoolmate that she was pregnant with the child of a married man, but the schoolmate could not remember the married man's name, and no evidence was offered to show that the other suspect was married. The deceased had also told the same schoolmate that she knew someone was going to kill her, but no offer was made as to whether the deceased had revealed the name of this person. The Idaho Supreme Court affirmed the exclusion of this evidence of an alternative perpetrator. The Court held that "there must be such proof of connection with the crime, such a train of facts or circumstances, as tend clearly to point out someone besides the accused as the guilty party." *Id.* at 47, 415 P.2d at 690 (quoting *State v. Caviness*, 40 Idaho 500, 507–08, 235 P. 890, 892 (1925)). The Court concluded that the proposed evidence did not meet this standard, but, instead, merely offered conjectural inferences that another person committed the crime. *Id.* at 47–48, 415 P.2d at 690–91.

It has been observed that the direct connection doctrine applied in *Larsen* is merely a specialized application of the requirement, now embodied in Idaho Rule of Evidence 403, that a trial court balance the probative value of evidence against countervailing considerations, such as confusion of the issues, undue delay, or waste of time.[2] David McCord, *"But Perry Mason Made it Look So Easy!:" The Admissibility of Evidence Offered by a Criminal Defendant to Suggest that Someone Else is Guilty*, 63 Tenn. L.Rev. 917, 975 (1996). Thus in *State v. Gibson*, 202 Ariz. 321, 44 P.3d 1001, 1003–04 (2002), the Arizona Supreme Court held that evidence of

2. *Larsen* was decided before the Idaho Rules of Evidence were adopted.

third-party culpability should be analyzed under Arizona Rules of Evidence 401, 402, and 403, which are identical to the corresponding Idaho rules. And in *People v. Hall*, 41 Cal.3d 826, 226 Cal.Rptr. 112, 718 P.2d 99, 104 (1986), the court observed that "courts should simply treat third-party culpability evidence like any other evidence: if relevant it is admissible unless its probative value is substantially outweighed by the risk of undue delay, prejudice, or confusion" (citations omitted).

■ Thus, our review of the exclusion of Kerchusky's proffered evidence is essentially an inquiry into whether the district court correctly applied I.R.E. 403, which authorizes the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We will not disturb a trial court's determination under I.R.E. 403 unless an abuse of discretion has been shown. *State v. Baer*, 132 Idaho 416, 419, 973 P.2d 768, 771 (Ct.App.1999); *State v. Birkla*, 126 Idaho 498, 500, 887 P.2d 43, 45 (Ct.App.1994).

Examination of the manner in which other courts have treated proffers of third-party perpetrator evidence is illuminating. In *United States v. Armstrong*, 621 F.2d 951 (9th Cir.1980), the defendant was charged with three bank robberies and had been identified as the robber through the eyewitness testimony of tellers. The defendant attempted to introduce evidence that another person, who matched the description of the robber, had purchased a car with $3,000 in bait bills that were taken during one of the robberies. The trial court excluded the evidence as irrelevant, but the appellate court held that the exclusion was prejudicial error, and reversed the conviction for that robbery. *Id.* at 953.

In *United States v. Robinson*, 544 F.2d 110 (2nd Cir.1976), three armed men robbed a bank, and the entire incident was captured on film by a surveillance camera. The trial court excluded defense evidence that the surveillance photograph resembled a third party who was suspected of committing two local armed robberies within six days of the robbery at issue, and who was still at large. The appellate court concluded that this testimony could have created a substantial doubt in the minds of the jurors, and therefore vacated the conviction and remanded the case for a new trial. *Id.* at 115–16.

In several other cases, appellate courts found the linkage between the third party and the crime to be too tenuous to make the evidence admissible. In *State v. Holloman*, 20 Conn.App. 521, 568 A.2d 1052 (1990), also a robbery case, the defendant offered evidence that his alleged accomplice, who owned the get-away car used in the crime, was friends with and lived in the same building as a third party whose physical description matched the description of the robber given by eyewitnesses to the crime, that the car could be operated without a key, that the accomplice was aware that people used his car without permission, and that the accomplice had left his car at his residence and not driven it on the day of the robbery. *Holloman*, 568 A.2d at 1057. The trial court excluded the third party's physical description from evidence. The appellate court expressed the same rule applied by the Idaho Supreme Court in *Larsen*, stating that evidence of third-party culpability would be allowed only if it directly connected the third party with the crime. The court concluded that such a connection had not been made with the proffered evidence, and consequently the physical description and residence of the third party were inadmissible. *Id.*

In *People v. Austin*, 112 A.D.2d 242, 491 N.Y.S.2d 458 (1985), the defendant claimed error in the trial court's exclusion of evidence that a third party matched the description given by the complainant. The court held that because the defendant had established no link between the third party and the crime, the offered evidence was speculative and potentially confusing, and affirmed the conviction. *Id.* at 459. Likewise, in *People v. Foley*, 109 Ill.App.3d 1010, 65 Ill.Dec. 520, 441 N.E.2d 655 (1982), the court upheld the exclusion of evidence that a third person matched the description of the robber where it was not shown that the third person had any connection with the crime.

■ Kerchusky's proposed evidence is very similar to that which was rejected in *Holloman, Austin,* and *Foley.* It would have shown only that the two men had access to the same wig that Kerchusky could have used, and that one of them was similar in appearance to the robber. This evidence, with nothing else to link either man to the robbery, was of negligible probative value, and we therefore hold that the district court did not abuse its discretion by excluding the evidence pursuant to the "direct connection doctrine" and I.R.E. 403.

■ Kerchusky also argues that the exclusion of his offered evidence violated his constitutional right to present evidence in his defense. The United States Supreme Court has recognized that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Few rights are more fundamental than that of an accused to present witnesses in his own defense. *Id.* at 302, 93 S.Ct. 1038. Thus, where the application of rules of evidence deprives a criminal defendant of a fair opportunity to defend against the charge, the conviction cannot stand. *Id.* at 302–03, 93 S.Ct. 1038; *Washington v. Texas,* 388 U.S. 14, 22–23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). In *Washington,* the judgment of conviction was vacated because the excluded evidence was "relevant and material, and ... vital to the defense." *Id.* at 16, 87 S.Ct. 1920.

However, the United States Supreme Court, in addressing a Sixth Amendment Compulsory Process Clause claim, has since held that in order to establish a violation of the constitutional right to present evidence, a defendant "must at least make some plausible showing of how [the] testimony would have been both material and favorable to his defense." *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). In addressing the materiality standard, the United States Supreme Court explained:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt.... This means

that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*Valenzuela–Bernal,* 458 U.S. at 868, 102 S.Ct. 3440 (quoting *United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). Similarly, this Court has stated, in addressing a Sixth Amendment compulsory process claim, that "[i]n constitutional terms, evidence is material if it would create a reasonable doubt in the minds of the jurors that did not otherwise exist." *State v. Garza,* 109 Idaho 40, 43, 704 P.2d 944, 947 (Ct.App.1985).

This materiality standard was applied to circumstances very similar to those presented here in *Sheffield v. Curran,* 645 F.Supp. 859 (D.Mass.1986). There, the petitioner claimed violation of his Sixth Amendment right to present a defense due to the trial court's exclusion of police photographs of a third party who resembled both the petitioner and the composite sketch derived from the victim's description. The court held that because there was no evidence linking the third party to the crime or even placing him in its vicinity, the petitioner's Sixth Amendment right had not been violated. *Id.* at 862.

■ In the present case, we have determined that Kerchusky's proffered evidence was of minimal probative value and would not have linked the other man to the crime. Given the compelling evidence of Kerchusky's guilt, we are confident that the excluded evidence would not have created a reasonable doubt in the minds of the jurors. Therefore, the evidence was not material and its exclusion did not deprive Kerchusky of his right to present a defense.

## B. Admission of Evidence of Pre-*Miranda* Silence

At trial, the prosecutor elicited testimony from two officers, without objection from defense counsel, regarding Kerchusky's lack of

reaction when he was detained outside of Quinn's. One officer testified that Kerchusky said nothing when he was asked by police to remain at the scene. The officer said that he found this unusual in that most people in that circumstance respond with some expression of anger, surprise, protestation of innocence, or question as to why they are being detained. Another officer testified that while he was talking to Kerchusky at the scene, Kerchusky asked no questions, and when told that he matched the description of a person who had just robbed a bank, Kerchusky just said, "Oh."

Kerchusky maintains that the admission of this testimony violated his right to due process and his Fifth Amendment right to remain silent. The United States Supreme Court has held that due process is violated if the prosecutor impeaches a testifying defendant with evidence that the defendant was silent upon his arrest after receiving *Miranda* warnings. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The Supreme Court has also held that a testifying defendant may be impeached with evidence of his silence before he was placed in custody and given *Miranda* warnings, *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), but the Court has not addressed the precise issue presented here—whether evidence of a defendant's silence before arrest and before *Miranda* warnings may be used not for impeachment purposes but as part of the prosecution's case-in-chief.

This issue has been resolved, however, by the Idaho Supreme Court with a determination in *State v. Moore*, 131 Idaho 814, 965 P.2d 174 (1998), that a defendant's silence before he was arrested or given *Miranda* warnings could not be used against him for non-impeachment purposes. After considering conflicting decisions from other jurisdictions the Court concluded:

> We believe the better rule is that which holds that the defendants' Fifth Amendment right not to have their silence used against them in a court proceeding is applicable pre-arrest and pre-*Miranda* warnings. The constitutional right is always present. "While the presence of *Miranda*

warnings might provide an additional reason for disallowing use of the defendants' silence, they are not a necessary condition to such a prohibition."

*Id.* at 820, 965 P.2d at 180 (quoting *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1018 (7th Cir.1987)).

█ The State argues that the testimony about Kerchusky's silence is not barred by the ruling in *Moore* because it was not admitted to imply Kerchusky's guilt, but only to show that he was not surprised at the reference to the bank robbery and therefore must have had prior knowledge of the robbery. The State's position is an unpersuasive exercise in semantics. The only reason for the State to show that Kerchusky had prior knowledge of the robbery would be to thereby imply that he must have been the robber. The testimony about Kerchusky's silence was used to demonstrate that he must be guilty because he failed to protest his innocence or otherwise react as an innocent person would be expected to do. Therefore, its admission violated Kerchusky's right not to have his silence used against him.

█ The State also argues that because Kerchusky did not object to this testimony at trial, we should not consider the issue on appeal. This Court generally will not address issues that were not raised in the trial court. Idaho Rule of Evidence 103(a)(1); *State v. MacDonald*, 131 Idaho 367, 371, 956 P.2d 1314, 1318 (Ct.App.1998); *State v. Donohoe*, 126 Idaho 989, 991–92, 895 P.2d 590, 592–93 (Ct.App.1995). However, "plain error" affecting substantial rights of a party may be reviewed despite not having been brought to the attention of the trial court. I.R.E. 103(d). The term, "plain error," in the context of a criminal case, embodies the concept of "fundamental error." *State v. Koch*, 115 Idaho 176, 178, 765 P.2d 687, 689 (Ct.App.1988). Error is fundamental if it goes to the foundation or basis of a defendant's rights or goes to the foundation of the case or takes from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. *State v. Sarabia*, 125 Idaho 815, 818, 875 P.2d 227, 230 (1994); *State v. Hollon*, 136 Idaho 499, 503, 36 P.3d 1287, 1291 (Ct.App.

2001); *State v. Lovelass*, 133 Idaho 160, 165, 983 P.2d 233, 238 (Ct.App.1999); *State v. Prelwitz*, 132 Idaho 191, 193, 968 P.2d 1100, 1102 (Ct.App.1998).

■ This Court has held that the admission of testimony about a defendant's post-*Miranda* silence constitutes fundamental error. *State v. Poland*, 116 Idaho 34, 36, 773 P.2d 651, 653 (Ct.App.1989). *See also State v. Strouse*, 133 Idaho 709, 714, 992 P.2d 158, 163 (1999) (holding that State's elicitation of defendant's post-*Miranda* silence, in absence of objection by defendant, constituted reversible error, but not discussing fundamental error doctrine). The prohibitions against prosecutorial use of pre-*Miranda* silence and of post-*Miranda* silence spring from the same constitutional doctrine. Therefore, we conclude that the State's presentation of evidence of Kerchusky's pre-arrest, pre-*Miranda* silence constituted fundamental error subject to appellate review.

■ While application of the fundamental error doctrine may appear to place a considerable burden on the trial court to exclude evidence sua sponte, the doctrine also reflects an obligation on the part of the State to refrain from eliciting evidence in violation of a defendant's constitutional rights. "[W]hile [the prosecutor] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *State v. Wilbanks*, 95 Idaho 346, 354, 509 P.2d 331, 339 (1973) (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)). Thus, application of the fundamental error doctrine serves to restrain prosecuting attorneys from violating defendants' constitutional rights by presenting unconstitutionally obtained evidence in the absence of objection by defense attorneys or sua sponte exclusion by trial courts.

■ Having concluded that the admission of testimony regarding Kerchusky's silence constituted fundamental error, we must determine whether the error is harmless or necessitates a new trial. Even error that is fundamental may be harmless in the context of the entire trial. *Poland*, 116 Idaho at 37, 773 P.2d at 654; *State v. Rutherford*, 107 Idaho 910, 916, 693 P.2d 1112, 1118 (Ct.App. 1985). "The test for harmless error ... is whether a reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence." *Moore*, 131 Idaho at 821, 965 P.2d at 181; *State v. Slater*, 136 Idaho 293, 300, 32 P.3d 685, 692 (Ct.App. 2001).

■ In this case, we conclude that the error in admission of testimony concerning Kerchusky's pre-arrest silence was harmless because, had this evidence been excluded, the extensive circumstantial evidence linking Kerchusky to the bank robbery would still have led the jury to find him guilty. The evidence showed that the man who robbed the bank was the same man who ran through Piper's yard, wearing the baseball cap, wig, glasses, fanny pack, and brown boots. Piper observed that Kerchusky had the same body build, height, and hair length as the man who had run across his yard. Kerchusky's boots were muddy, as was Piper's yard, and their tread matched the boot print in Piper's yard. Kerchusky also had access to a wig and glasses and owned a baseball cap similar to those used in the robbery. Soon after the robbery, Kerchusky was at Quinn's Lounge near the bank. He was sweaty, and, according to the bartender, had never been in Quinn's before. The cash in Kerchusky's wallet and pouch, together with that which he had spent on drinks, was the precise sum that had been stolen from the bank.[3] A bank employee identified Kerchusky as the robber. In light of this evidence, we are confident beyond a reasonable doubt that the jury would have found Kerchusky guilty if the court had excluded the testimony regarding Kerchusky's silence when he was initially detained. Therefore, the error in the introduction of evidence of Kerchusky's pre-arrest silence does not call for a new trial.

---

**3.** This coincidence is worthy of consideration notwithstanding that Kerchusky was separately carrying six or seven dollars in a pocket and that a one dollar bill was found by police near the dumpster.

## C. Sentence

Kerchusky also asserts that the district court abused its discretion by imposing a unified fifteen-year sentence with a six-year minimum term and by denying Kerchusky's motion under Idaho Criminal Rule 35 for reduction of the sentence. When a sentence is challenged on appeal, this Court examines the record, focusing upon the nature of the offense and the character of the offender, to determine if there has been an abuse of the sentencing court's discretion. *State v. Young,* 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991). The defendant bears the burden to show that the sentence is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation, and retribution. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). An abuse of discretion will be found only if, in light of the governing criteria, the sentence is excessive under any reasonable view of the facts. *State v. Charboneau,* 124 Idaho 497, 500, 861 P.2d 67, 70 (1993). Where reasonable minds might differ as to the length of the sentence, this Court will not substitute its view for that of the district court. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *State v. Admyers,* 122 Idaho 107, 108, 831 P.2d 949, 950 (Ct.App.1992).

A motion to reduce a lawful sentence is also committed to the trial court's discretion. *State v. Wersland,* 125 Idaho 499, 504, 873 P.2d 144, 149 (1994); *State v. Lavy,* 121 Idaho 842, 845, 828 P.2d 871, 874 (1992); *State v. Hernandez,* 121 Idaho 114, 117, 822 P.2d 1011, 1014 (Ct.App.1991). In reviewing the denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde,* 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App.1987); *State v. Lopez,* 106 Idaho 447, 450, 680 P.2d 869, 872 (Ct.App.1984).

Kerchusky's criminal record included prior felony convictions for grand theft and theft by extortion as well as eleven misdemeanor convictions. In light of Kerchusky's criminal history, and the seriousness of the offense, we conclude that the sentence is not excessive under any reasonable view of the facts. Therefore, the district court did not abuse its discretion in sentencing Kerchusky or in denying his Rule 35 motion.

## CONCLUSION

Kerchusky has not demonstrated that there was reversible error in his trial nor that his sentence is excessive. Accordingly, the judgment of conviction and sentence, and the order denying Kerchusky's motion for reduction of the sentence, are affirmed.

Judge PERRY and Judge Pro Tem JUDD concur.