STATE OF CONNECTICUT *v.* PATRICK S. EADY
(SC 15858)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued March 26—officially released July 21, 1998*

* Superseded. See *State* v. *Eady,* 249 Conn. 431, 733 A.2d 112 (1999).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *John H. Malone*, assistant state's attorney, for the appellant (state).

*Richard Condon, Jr.*, deputy assistant public defender, for the appellee (defendant).

*Opinion*

BERDON, J. The defendant, Patrick S. Eady, was arrested and charged with illegal possession of narcotics in violation of General Statutes § 21a-279 (a),[1] illegal

---

[1] General Statutes § 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (b),[2] illegal possession of marijuana in violation of § 21a-279 (c),[3] and illegal possession of marijuana with intent to sell in violation of § 21a-277 (a).[4] Prior to trial, the defendant moved to suppress the marijuana and cocaine seized from a cigar box located in his bedroom, claiming that the state's warrantless entry into his house and the seizure of the evidence was unreasonable and, therefore, in violation of his reasonable expectation of privacy guaranteed by the fourth and fourteenth amendments of the United

[2] General Statutes § 21a-277 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana, except as authorized in this chapter, may, for the first offense, be fined not more than twenty-five thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than one hundred thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

[3] General Statutes § 21a-279 (c) provides: "Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marijuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned."

[4] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

States constitution.[5] Following a suppression hearing, the trial court, *Graham, J.*, granted the defendant's motion, concluding that the state had failed to prove that the warrantless search and seizure fell within one of the claimed exceptions to the warrant requirement.[6] Thereafter, the trial court, *Mullarkey, J.*, granted the defendant's motion to dismiss the charges pursuant to General Statutes § 54-56[7] on the ground that there was insufficient evidence to continue with the prosecution as a result of the trial court's suppression of the evidence. The state, on the granting of permission from the trial court,[8] appealed the judgment of dismissal to the Appellate Court, on the ground that the seizure of the contraband came within the "plain view" exception to the warrant requirement. We transferred the appeal to this court pursuant to Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c). We affirm the decision of the trial court.

The following facts are not in dispute. Shortly after 3 p.m. on August 12, 1995, firefighters from the Windsor

---

[5] Although the defendant raises the protection of article first, § 7, of the Connecticut constitution, we decide this case on the more limited grounds of the federal constitution. *State* v. *Geisler*, 222 Conn. 672, 684, 610 A.2d 1225 (1992).

[6] The state argued in its trial brief opposing the defendant's motion to suppress that the search and seizure met the requirements of one or more of the following exceptions to the warrant requirement: consent, emergency, exigent circumstances and plain view.

[7] General Statutes § 54-56 provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

[8] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

volunteer fire department responded to a fire at a single-family house at 19 Songonosk Street in Windsor. Fire Captain Angel L. Marrero was one of the volunteer firefighters who responded to the fire.

Pursuant to standard procedure, Marrero and two other firefighters entered the front door of the house to suppress the fire to a point where they could search the house for individuals who might need assistance. Once the fire was sufficiently suppressed, Marrero and another firefighter commenced searching the residence for potential victims. At the same time, they opened windows and doors for ventilation and to allow heat from the fire to escape. When Marrero encountered a locked interior door, he forced his way into the room, which turned out to be the defendant's bedroom. Finding no one in the room, Marrero proceeded to pull the screens from the room's windows. While doing so, he observed an open cigar box and a closed cigar box on a dresser adjacent to the window. In the open box, Marrero saw a plastic bag containing what he described as "a green leafy substance," which he believed might be marijuana. Marrero testified at the suppression hearing that he had no training in identifying drugs. Moreover, there was no evidence to indicate that Marrero had any familiarity with the appearance or physical characteristics of marijuana or other drugs. After observing the substance in the cigar box, Marrero notified Fire Chief William Lewis.

Lewis apprised Sergeant Thomas Lepore of the Windsor police department, who was outside performing traffic control duties, of Marrero's suspicions. Lepore and Officer Casher Holt then made a warrantless entry into the defendant's house, and Marrero led them to the defendant's bedroom. After observing a plastic bag filled with a green leafy substance in the open cigar box, Lepore seized the box. Lepore examined the contents of the box and discovered that it contained marijuana,

cocaine in both powder and rock form, a photograph of the defendant and a store shopping card with the defendant's name on it.[9]

It is a "basic principle of Fourth Amendment law that searches and seizures inside a [person's] house without warrant are per se unreasonable in the absence of some one of a number of well defined 'exigent circumstances.' "[10] *Coolidge* v. *New Hampshire,* 403 U.S. 443, 477–78, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); see *Katz* v. *United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *State* v. *Longo,* 243 Conn. 732, 737, 708 A.2d 1354 (1998); *State* v. *Badgett,* 200 Conn. 412, 423, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). In *Coolidge* v. *New Hampshire,* supra, 443, "the United States Supreme Court held that in certain circumstances a warrantless seizure by police of an item that comes within plain view during their lawful search of a private area may be reasonable under the fourth amendment." *State* v. *Ruscoe,* 212 Conn. 223, 237, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990). The plain view exception to the warrant

---

[9] The trial court made the following further findings: "The sole reason for the police officers' presence in the house was to view and seize the cigar box. Neither officer was present for any other purpose. Lepore had no fear of fire destroying the drugs. The house was watched and secured by police officers to ensure no one entered it except police and fire officials. Lepore was afraid someone might take the drugs, given that the fire department would eventually turn the house back to its occupants. However, following standard procedure, after the fire department concluded its work, the premises were turned over to the fire marshall, a full-time town employee, until his investigation as to fire cause and origin was complete. Only then was the homeowner able to reenter.

"While the timing of the sequence of events was never precisely established by the state, the fire marshall arrived in the area of 3:30 p.m. and stayed approximately two hours, until his investigation was completed (at least one hour) after the cigar box was seized. The fire was determined to be an accidental cooking fire."

[10] The fourth amendment applies equally to police officers and firefighters. *Michigan* v. *Tyler,* 436 U.S. 499, 506, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978).

requirement "is based upon the premise that the police need not ignore incriminating evidence in plain view while they are . . . entitled to be in a position to view the items seized." *State* v. *Ruth,* 181 Conn. 187, 193, 435 A.2d 3 (1980); see *Harris* v. *United States,* 390 U.S. 234, 236, 88 S. Ct. 992, 19 L. Ed. 2d 1067 (1968). Three requirements must be met to invoke the plain view doctrine: First, the items seized must be in the plain view of the police, second "the initial intrusion that enabled the police to view the items seized must have been lawful; and [third] the police must have had probable cause to believe that these items were contraband or stolen goods." *State* v. *Ruscoe,* supra, 237–38; *Arizona* v. *Hicks,* 480 U.S. 321, 326–27, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987).

"[T]he burden is on those seeking [an] exemption [to the warrant requirement] to show the need for it . . . ." (Citation omitted.) *United States* v. *Jeffers,* 342 U.S. 48, 51, 72 S. Ct. 93, 96 L. Ed. 59 (1951). "We cannot . . . excuse the absence of a search warrant without a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative." *McDonald* v. *United States,* 335 U.S. 451, 456, 69 S. Ct. 191, 93 L. Ed. 153 (1948); see *State* v. *Zindros,* 189 Conn. 228, 237–38, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984). The United States Supreme Court explained in *Jeffers* that by placing this burden on the state, the fourth amendment "does not place an unduly oppressive weight on law enforcement officers but merely interposes an orderly procedure under the aegis of judicial impartiality that is necessary to attain the beneficent purposes intended." *United States* v. *Jeffers,* supra, 51.

The trial court concluded that the warrantless seizure of the defendant's cigar box did not fall within the plain view exception to the warrant requirement because "the police had no lawful basis for being in [the] defendant's

bedroom without a warrant . . . ." The state argues that the trial court incorrectly applied the plain view exception to the facts of this case. According to the state, the police officers' entry of the house was a mere continuation of the firefighter's initial lawful entry,[11] and it was permissible for the officers to seize evidence in the plain view of the firefighter.[12] The defendant responds that the officers' warrantless entry was not lawful because it clearly was detached from the firefighter's initial emergency entry into the house to extinguish the fire, and, even if the officers' entry was lawful, the firefighter did not have probable cause to believe that the cigar box contained contraband.[13] The state concedes that the firefighter was required to have probable cause in order to support its claim that the police

[11] See *Michigan* v. *Tyler*, 436 U.S. 499, 511, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978) (holding "that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze").

[12] The defendant argues that the state failed properly to preserve before the trial court its claim that the plain view exception to the warrant requirement applies to the firefighter's actions. See Practice Book § 4061, now Practice Book (1998 Rev.) § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").

We note that the state's argument in its trial brief—predicated on the police officers' plain view of the items seized—did not expressly raise this claim that the officers could seize items that were in the plain view of the firefighter. Nevertheless, in its trial brief, the state argued that "[t]he contents of the open cigar box came into [Marrero's] view while he was engaged in firefighting activity. When the police were summoned to the room, their attention was directed by Captain Marrero to the open cigar box that he had already observed."

Although the issue of the applicability of the plain view exception to the firefighter's actions was not raised in an artful fashion, it was raised sufficiently to require this court to review it.

[13] The state argues that the defendant's failure to inquire about the firefighter's basis of knowledge at the suppression hearing demonstrates that he did not dispute that the firefighter had probable cause to search the cigar box. We disagree. Whether the defendant inquired about the firefighter's basis of knowledge is irrelevant to our determination of whether the state has borne its "burden of showing that an exception to the warrant requirement exists." *State* v. *Geisler*, 222 Conn. 672, 682, 610 A.2d 1225 (1995); *Arkansas* v. *Sanders*, 442 U.S. 753, 759–60, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979).

officers' entry into the house was a continuation of the firefighter's lawful entry,[14] but argues that the underlying facts support the legal conclusion that the firefighter had probable cause.

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." (Internal quotation marks omitted.) *State* v. *Zarick,* 227 Conn. 207, 222, 630 A.2d 565, cert. denied, 510 U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993); see *State* v. *Vincent,* 229 Conn. 164, 171–72, 640 A.2d 94 (1994). "The quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. Our cases have made clear that [t]here is often a fine line between mere suspicion and probable cause, and [t]hat line necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances. *Brinegar* v. *United States,* [338 U.S. 160, 176, 69 S. Ct. 1302, 93 L.

---

[14] The defendant argues that the police officers' entry into the house could be justified as a continuation of firefighter Marrero's legal entry into the house, in order to dispense with the warrant requirement, *only* if the item seized was related to the firefighter's purpose in entering and searching the house and bedroom—for example, if the item seized was evidence of arson. Otherwise, the defendant argues, the police officers were required to obtain a warrant. See *Michigan* v. *Tyler,* 436 U.S. 499, 511, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978) (warrant is not necessary for reentry of house, close in time to initial fire emergency, when reentry is by officials investigating cause and origin of fire); *State* v. *Magnano,* 204 Conn. 259, 267, 528 A.2d 760 (1987) (when law enforcement officer "enters private premises in response to a call for help, and during the course of responding to the emergency observes but does not take into custody evidence in plain view, a subsequent entry shortly thereafter, by detectives whose duty it is to process evidence, constitutes a mere continuation of the original entry").

We do not decide in this appeal whether the police officers' entry into the house and the defendant's bedroom was lawful as a continuation of the firefighter's initial lawful entry because we conclude that the firefighter did not have probable cause to believe that the substance in the cigar box was contraband.

Ed. 1879 (1949)]. *State* v. *Penland,* 174 Conn. 153, 155–56, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978)." (Internal quotation marks omitted.) *State* v. *Dennis,* 189 Conn. 429, 431–32, 456 A.2d 333 (1983). Consequently, "[t]here must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed. *Beck* v. *Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Velez,* 215 Conn. 667, 672, 577 A.2d 1043 (1990).

As a threshold matter, we set forth the appropriate standard under which we review a challenge to a trial court's granting of a suppression motion. " 'This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go.' *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *State* v. *Zindros,* supra, 189 Conn. 238.

Although the trial court focused upon the second requirement of the plain view exception in its memorandum of decision—whether the officers' intrusion was lawful—it is obvious that once the trial court concluded that the state had failed to establish this requirement, it was not necessary to discuss the third requirement of probable cause. The trial court, however, in

addressing the state's alternative argument that Lepore's warrantless seizure of the cigar box fell within the exigent circumstances exception to the warrant requirement, did determine the issue of whether Marrero had probable cause to believe that the substance was contraband. The trial court found that Lepore did not have probable cause under this exception because "the information upon which he decided to enter the house"—Marrero's suspicion that the box contained marijuana—was insufficient.

After reviewing the record of this case, we conclude that the trial court's legal conclusion that Marrero did not have probable cause to believe the substance was marijuana is legally and logically correct, and that it finds support in the facts set out in the court's memorandum of decision. First, Marrero testified at the suppression hearing that he had no experience in identifying drugs and that when he first saw the bag, he "had a question in [his] mind if it happened to be marijuana." Because of Marrero's lack of experience and training in identifying marijuana, he requested that Lepore observe the item. At best, Marrero had a reasonable suspicion that the substance in the plastic bag was marijuana.[15] Marrero's reasonable suspicion that the item was contraband, however, "means something less than probable cause." *Arizona* v. *Hicks*, supra, 480 U.S. 326 (police officer lacked probable cause to conduct search of defendant's expensive stereo equipment, found in plain

[15] The trial court's memorandum of decision provided: "Lepore testified that the information upon which he decided to enter the house was that items found by Marrero were 'suspected' to be drugs. Marrero, in his own words, testified that when he saw the open cigar box in [the] defendant's bedroom he thought, 'Not being an expert, but I had a question in my mind if it happened to be marijuana.' Marrero also admitted to having no training in identifying drugs. Nor did Lepore, the ranking officer present and [the] lead policeman in the seizure, believe Marrero to be so trained. No evidence was presented to indicate any familiarity on Marrero's part with the appearance or physical characteristics of marijuana or other drugs."

view, because officer had only reasonable suspicion—i.e., less than probable cause to believe—that stereo equipment was stolen). In *Beck* v. *Ohio*, supra, 379 U.S. 97, the United States Supreme Court explained that "[i]f subjective good faith alone were the test [of probable cause], the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, papers, and effects, only [at] the discretion of the police." (Internal quotation marks omitted.) See *Byars* v. *United States*, 273 U.S. 28, 29, 47 S. Ct. 248, 71 L. Ed. 520 (1927) (warrant issued upon information that "states only that affiant has good reason to believe and does believe the defendant has [contraband] in his possession . . . clearly is bad if tested by the Fourth Amendment and the laws of the United States" [internal quotation marks omitted]); *State* v. *DeChamplain*, 179 Conn. 522, 528, 427 A.2d 1338 (1980) ("[p]urely conclusory affidavits by the affiant . . . that he or she believes that probable cause exists . . . cannot be relied upon").

Second, the state failed to prove that Marrero's belief was "reasonably corroborated by other matters" within his knowledge.[16] *Jones* v. *United States*, 362 U.S. 257,

[16] Contrary to the dissent's assertion, our conclusion that Marrero lacked probable cause does not rest "exclusively" on the fact that Marrero did not subjectively know that the observed substance was marijuana. Instead, we reach our conclusion on the basis of two factors: (1) Marrero had no more than a reasonable suspicion that the substance was marijuana; and (2) facts and circumstances within Marrero's knowledge do not justify the belief of a reasonable person that the substance was marijuana.

Furthermore, we take issue with the dissent's dim view of humanity that "an average citizen who has been reasonably alert the last several years almost certainly would conclude," on the basis of the fact that (1) the substance was green and leafy, (2) it was in a clear plastic bag, (3) it was in an open cigar box, and (4) the cigar box was found inside a locked bedroom, "that the substance in the cigar box was probably marijuana." Although we concede that an average citizen would be suspicious that the substance was marijuana, suspicion does not constitute probable cause. *State* v. *Marra*, 222 Conn. 506, 513, 610 A.2d 1113 (1992).

269, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960). "[I]t [is] incumbent upon the prosecution to show with considerably more specificity than was shown in this case" why Marrero thought the substance was marijuana. *Beck* v. *Ohio*, supra, 379 U.S. 97; see *Jones* v. *United States*, supra, 271 ("[c]orroboration through other sources of information reduced" chance that officer did not have probable cause to search apartment). Marrero testified that he had a question in his mind whether the substance in the cigar box was marijuana. He never testified why he thought it might be marijuana, nor did the state present any evidence to corroborate his belief. In *Nathanson* v. *United States*, 290 U.S. 41, 47, 54 S. Ct. 11, 78 L. Ed. 159 (1933), the United States Supreme Court held that "mere affirmance of suspicion or belief without disclosure of supporting facts or circumstances" was insufficient to support the state's request for a search warrant. See *Spinelli* v. *United States*, 393 U.S. 410, 423, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969) (White, J., concurring) (where police "officer simply avers, without more, that there is gambling paraphernalia on certain premises, the warrant should not issue, even though the belief of the officer is an honest one, as evidenced by his oath, and even though the magistrate knows him to be an experienced, intelligent officer who has been reliable in the past"). Likewise, Marrero's affirmance of his suspicion and belief that the substance inside the cigar box was marijuana is insufficient to support a finding of probable cause.

We conclude, on the basis of the facts found by the trial court, that Marrero did not have probable cause to believe that the substance he observed in plain view was marijuana or other contraband.

The judgment is affirmed.

In this opinion NORCOTT and KATZ, Js., concurred.

CALLAHAN, C. J., with whom BORDEN, J., joins, dissenting. I disagree with the majority's conclusion that Angel Marerro, fire captain of the Windsor volunteer fire department, lacked probable cause to believe that the green, plant-like material he observed in plain view in the bedroom of the defendant, Patrick Eady, was marijuana. Moreover, I would conclude that the subsequent observation and seizure of the contraband by a police officer falls within the plain view exception to the warrant requirement of the fourth amendment to the United States constitution. I also believe that the majority's conclusion is against the overwhelming weight of authority and, therefore, I respectfully dissent.

The following facts are not in dispute. At approximately 3 p.m. on August 12, 1995, the Windsor volunteer fire department responded to a reported fire in a single-family residence at 19 Songonosk Street in Windsor. Once the fire was sufficiently suppressed to permit entry into the premises, Marerro and other firemen entered the residence in order to ventilate it and to search for possible victims. During the course of this procedure, Marerro came upon the locked door to the defendant's bedroom. Marerro forced entry into the room to search for possible victims. Finding none, he proceeded to open the window for ventilation. While opening the window, Marerro observed two cigar boxes on a dresser. One box was open and contained a small, clear plastic bag with a small quantity of a green, leafy substance. It is undisputed that, at the time, Marerro was lawfully in the defendant's bedroom and properly acting within the scope of his authority.

Marerro informed William Lewis, the fire chief in charge at the scene, that he believed that he had found marijuana. Thereafter, Lewis conveyed this information to Sergeant Thomas Lepore of the Windsor police department, who was outside the residence directing

traffic. Lepore entered the defendant's bedroom and observed a substance that he recognized as marijuana in the cigar box, as well as cocaine in rock and powder form. The box also contained a shopping card with the defendant's name on it and a photograph of the defendant. Lepore seized the cigar box and its contents without obtaining a warrant.

The items in the cigar box subsequently were confirmed to be cocaine and marijuana. The defendant was charged with illegal possession of narcotics and possession of narcotics with intent to sell in violation of General Statutes §§ 21a-279 (a) and 21a-277 (b) and with illegal possession of marijuana in violation of General Statutes § 21a-279 (c). The defendant moved to suppress the cocaine and marijuana as the product of an illegal search and seizure. He claimed that the entry by the police officer and the seizure of the cigar box without a warrant violated his fourth amendment rights against unreasonable search and seizure because there was no applicable exception to the warrant requirement that existed under the circumstances. The trial court granted the defendant's motion. Thereafter the defendant moved to dismiss the charges pursuant to General Statutes § 54-56[1] for lack of sufficient evidence. The court granted the defendant's motion to dismiss. The state, on the granting of permission by the trial court, appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023, now § 65-1, and General Statutes § 51-199 (c).

The fourth amendment to the United States constitution, made applicable to the states through the fourteenth amendment, prohibits unreasonable searches

[1] General Statutes § 54-56 provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged

and seizures by government agents.[2] A warrantless search and seizure is per se unreasonable, subject to a few well defined exceptions. *Katz* v. *United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *State* v. *Miller*, 227 Conn. 363, 383, 630 A.2d 1315 (1993); *State* v. *Lewis*, 220 Conn. 602, 609, 600 A.2d 1330 (1991). The state bears the burden of proving that an exception to the warrant requirement applied. *Mincey* v. *Arizona*, 437 U.S. 385, 390–91, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *State* v. *Blades*, 225 Conn. 609, 618, 626 A.2d 273 (1993).

In *Coolidge* v. *New Hampshire*, 403 U.S. 443, 464–73, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), the United States Supreme Court articulated what has become known as the plain view exception to the warrant requirement. The warrantless seizure of contraband that is in plain view is reasonable under the fourth amendment if two

if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

[2] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

Although the defendant refers to a violation of his rights under article first, § 7, of the Connecticut constitution, he has failed to provide an independent analysis of the state constitutional issues. See *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992) (setting forth appropriate factors to be addressed when raising state constitutional claim). "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . . *State* v. *Robinson*, 227 Conn. 711, 721–22, 631 A.2d 288 (1993); see also *State* v. *Williams*, 231 Conn. 235, 245 n.13, 645 A.2d 999 (1994); *State* v. *Joyner*, 225 Conn. 450, 458 n.4, 625 A.2d 791 (1993); *State* v. *Rosado*, 218 Conn. 239, 251 n.12, 588 A.2d 1066 (1991)." (Internal quotation marks omitted.) *State* v. *Ellis*, 232 Conn. 691, 692 n.1, 657 A.2d 1099 (1995).

requirements are met:' "(1) the initial intrusion that enabled the police to view the items seized must have been lawful; and (2) the police must have probable cause to believe that these items were contraband or stolen goods."[3] *State* v. *Ruscoe*, 212 Conn. 223, 237–38 n.8, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); *State* v. *Reddick*, 207 Conn. 323, 335, 541 A.2d 1209 (1988).

In *Michigan* v. *Tyler*, 436 U.S. 499, 509–10, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978), the United States Supreme Court concluded that fire officials are subject to the same fourth amendment limitation as any other governmental agents. The court concluded, however, that "[a] burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable.' Indeed, it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze. . . . [Furthermore, fire] officials need no warrant to remain in the building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes is also constitutional." (Citations omitted.) Id. In *Michigan* v. *Clifford*, 464 U.S. 287, 293–94, 104 S. Ct. 641, 78 L. Ed. 2d 477 (1984), the court expressly concluded that evidence observed in plain view by firefighters may be seized without a warrant, if it is observed

---

[3] Under *Coolidge*, it was unclear when and whether a third requirement, that the police must have discovered the evidence or contraband inadvertently, applied. We have concluded that " 'inadvertence is not required if the items seized fall under the category of contraband, stolen property or objects dangerous in themselves.' " *State* v. *Couture*, 194 Conn. 530, 547, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see *Horton* v. *California*, 496 U.S. 128, 137–38, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). Because marijuana, the possession of which is illegal pursuant to § 21a-279 (c), is contraband, we need not address the issue of inadvertence. See, e.g., *State* v. *Sailor*, 33 Conn. App. 409, 414, 635 A.2d 1237 (1994).

after a lawful entry. Both *Tyler* and *Clifford* involved the seizure of evidence relating to the crime of arson. Numerous state and lower federal courts, including our Appellate Court, have concluded that evidence of crimes other than arson, which evidence is observed in plain view by fire officials while the officials are lawfully present on the premises, also may be seized. *United States* v. *Johnson*, 524 F. Sup. 199, 204–205 (D. Del. 1981) (drugs and drug paraphernalia), rev'd on other grounds, 690 F.2d 60 (3d Cir. 1982), cert. denied, 459 U.S. 1214, 103 S. Ct. 1212, 75 L. Ed. 2d 450 (1983); *State* v. *Wilson-Bey*, 21 Conn. App. 162, 166–67, 572 A.2d 372, cert. denied, 215 Conn. 806, 576 A.2d 537 (1990) (same);[4] *Commonwealth* v. *Person*, 385 Pa. Super. 197, 204, 212–13, 560 A.2d 761 (1989) (Beck, J., concurring and dissenting) (same); *State* v. *Bell*, 108 Wash. 2d 193, 196 n.1, 737 P.2d 254 (1987) (same); annot., Admissibility, in Criminal Case, of Evidence Discovered by Warrantless Search in Connection with Fire Investigation—Post-Tyler Cases, 31 A.L.R.4th 194 (1984). It is undisputed that the first element of the plain view exception, that the initial entry be lawful, was met. Marerro obviously was lawfully performing his duty as a firefighter when he entered the defendant's

---

[4] In *Wilson-Bey*, the Appellate Court concluded that there was no fourth amendment violation where arson investigators who were lawfully on the premises observed and seized evidence of drug activity without a warrant. *State* v. *Wilson-Bey*, supra, 21 Conn. App. 165. The evidence seized included drug manufacturing equipment, crack cocaine vials, a propane torch and a packet of white powder found in the refrigerator. Id. The court concluded that the seizure of these items by fire investigators did not violate the fourth amendment because requirements of the plain view exception were met. Id., 166–67.

It is difficult to reconcile the conclusion in *Wilson-Bey* with the majority's conclusion that Marerro lacked probable cause to believe that he had observed contraband. The probability that the evidence observed by firefighters in *Wilson-Bey* was contraband was far less apparent than under the facts of the present case. There was no indication in that case that fire officials had any greater drug identification experience than did Marerro.

bedroom to ventilate the house and to search for possible victims. The open cigar box and its contents were, furthermore, in plain view.

The only questions that remain are whether it was immediately apparent to Marerro that the cigar box contained contraband,[5] and whether Lepore's subsequent entry and seizure were a lawful extension of Marerro's observation. The "immediately apparent" requirement of the plain view exception is met if, upon discovery of the contraband or evidence, there is "probable cause to associate the property in plain view with criminal activity without further investigation." *State* v. *Reddick*, supra, 207 Conn. 335, citing *Arizona* v. *Hicks*, 480 U.S. 321, 324–27, 107 S. Ct. 1149, 94 L. Ed. 2d 347

---

[5] It bears noting that in determining whether the *seizure* of the contraband was supported by probable cause, we may also consider the knowledge of the police officer who actually seized the evidence. The seizure in this case was made by a police officer, and I do not believe that the majority would dispute that it is reasonably probable that a police officer is capable of identifying marijuana. See, e.g., *State* v. *Cosgrove*, 181 Conn. 562, 587–88, 436 A.2d 33 (1980) (police officer's testimony sufficient to establish proof beyond reasonable doubt that substance is illegal drug, without chemical analysis). I would conclude, as do a majority of other courts, that because the police officer may step into the shoes of the firefighter in the "search," i.e., being present in the emergency situation, it is permissible to include the knowledge of the firefighter and the police officer in determining if there is probable cause to believe that the substance observed by both was contraband, thus making the seizure lawful. See, e.g., *United States* v. *Green*, 474 F.2d 1385, 1390 (5th Cir.), cert. denied, 414 U.S. 829, 94 S. Ct. 55, 38 L. Ed. 2d 63 (1973); *People* v. *Harper*, 902 P.2d 842, 846 (Colo. 1995); *State* v. *Loh*, 275 Mont. 460, 474, 914 P.2d 592 (1996); *Commonwealth* v. *Person*, supra, 385 Pa. Super. 197. There need not be proof of an independent determination of probable cause by the fire official prior to the police officer's entry. The relevance of Marerro's determination of probable cause goes only to a determination of whether it was immediately apparent to him that he was observing contraband. I do not consider this significant because it is not necessary to rely on the finding of probable cause by Marerro to make Lepore's entry lawful. Nor is it a necessary predicate to the seizure because Lepore's determination of probable cause was sufficient to make that lawful. Because the majority relies exclusively on Marerro's finding of probable cause, however, I do the same without conceding that its approach is proper.

(1987). I disagree with the majority's conclusion that Marerro lacked probable cause to believe that the cigar box contained contraband. The majority concludes that because there is no evidence that Marerro was an expert in drug identification or that he was personally familiar with marijuana, it is not possible to conclude that he had probable cause to believe that the green, leafy substance was marijuana. I believe that the majority overstates the requirements of probable cause.

Certainly, Marerro's testimony alone would be insufficient to prove the defendant guilty beyond a reasonable doubt. We consistently have held, however, that "[t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction." (Internal quotation marks omitted.) *State* v. *Marra*, 222 Conn. 506, 513, 610 A.2d 1113 (1992). "While probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Trine*, 236 Conn. 216, 237, 673 A.2d 1098 (1996). "Our cases have made clear [t]hat there is often a fine line between mere suspicion and probable cause . . . ." (Internal quotation marks omitted.) *State* v. *Marra*, supra, 513; *In re Keijam T.*, 221 Conn. 109, 115, 602 A.2d 967 (1992). Furthermore, we have concluded that "proof of probable cause requires less than proof by a preponderance of the evidence. *In re Keijam T.*, [supra, 115]; see also *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994)." *State* v. *Munoz*, 233 Conn. 106, 135–36, 659 A.2d 683 (1995).

"Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . The probable cause determination is, simply, an analysis of probabilities. . . . The determination is not a technical one, but is informed by the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act. . . . Probable cause is not readily, or even usefully, reduced to a neat set of legal rules. . . . Reasonable minds may disagree as to whether a particular [set of facts] establishes probable cause." (Citations omitted; internal quotation marks omitted.) *State* v. *Diaz*, 226 Conn. 514, 541, 628 A.2d 567 (1993). It is axiomatic that "[t]he probable cause test then is an objective one." (Internal quotation marks omitted.) *State* v. *Trine*, supra, 236 Conn. 237. The United States Supreme Court has endorsed an objective standard, noting that "evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend on the subjective state of mind of the officer."[6] *Horton* v. *California*, 496 U.S. 128, 138, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990).

In light of this objective standard, it is inappropriate to focus exclusively, as the majority does, on whether Marerro subjectively knew that the green, leafy substance he had observed was marijuana. We need only look to the evidence presented relating to Marerro's basis of knowledge and to determine whether a reasonable person would have probable cause to believe the

---

[6] Indeed, I think it is incorrect to conclude that the defendant's fourth amendment rights revolve around whether the firefighter who ventilated the defendant's bedroom had sufficient knowledge of marijuana to recognize it, when, as a practical matter, an average citizen who has been reasonably alert the last several years almost certainly would conclude, even without having any specific training or detailed knowledge of marijuana plants, that the substance in the cigar box was probably marijuana.

substance was marijuana on the basis of that knowledge. Consequently, we must determine whether an impartial firefighter of ordinary prudence reasonably would conclude that a small quantity of a green, leafy substance in a plastic bag in a cigar box in a locked bedroom in a single-family residence was probably marijuana. One would have needed no expertise in drug identification to conclude that the green, leafy substance probably was marijuana.[7] What other green, leafy substance would one normally keep in a plastic bag in a cigar box in a locked bedroom? To be sure, it is possible that it might have been some innocuous substance such as oregano, and, I suppose, it is possible that an individual might, for some extraordinary reason, keep kitchen spices in the bedroom. We are not concerned here with possibilities, however, but with probabilities. Had the packet been found on the spice rack in the defendant's kitchen, the probability that it was not marijuana would have been substantially increased. Under the circumstances, however, a reasonable and prudent person reasonably could have concluded that it was likely that the substance observed by Marerro was marijuana. See *State* v. *Bell,* supra, 108 Wash. 2d 197–98 (firefighters capable of recognizing substance as marijuana to meet "immediately apparent" requirement). Consequently, I cannot agree with the majority's conclusion that Marerro lacked probable cause to believe that the substance he observed was marijuana.[8]

---

[7] The majority's characterization notwithstanding, I believe that most people who observed a green, leafy substance under the same conditions as those facing Marerro would believe that it was marijuana. I think, therefore, that the majority should have concluded that a reasonable person in Marerro's shoes would have probable cause, not merely reasonable suspicion, to believe that what he observed was marijuana.

[8] The majority asserts that Marerro lacked probable cause because, after the fact, he testified that "I had a question in my mind if it happened to be marijuana." I do not consider this sufficient to conclude that Marerro, subjectively, had only a suspicion rather than a belief that he had observed marijuana. When asked directly what he thought he had seen, he responded unequivocally, "[m]arijuana." Although precision in language is a laudable

Furthermore, I would conclude that the subsequent entry and seizure of the cigar box by Lepore without a warrant was permissible as simply an extension of Marerro's lawful entry and observation of the contraband. It is undisputed that in entering the bedroom and seizing the cigar box and its contents, Lepore never exceeded the scope of Marerro's lawful entry and observation, nor was Lepore's seizure of the box more than Marerro could have done.[9] We concluded in *State* v. *Magnano*, 204 Conn. 259, 267, 528 A.2d 760 (1987), that "when a law enforcement officer enters private premises in response to a call for help, and during the course of responding to the emergency observes but does not take into custody evidence in plain view, a subsequent entry shortly thereafter, by detectives whose duty it is to process evidence, constitutes a mere continuation of the original entry." We based our reasoning in large part on the fact that such a rule enhances sound policy with respect to police investigation techniques. Id., 271. We noted that "[i]t is a reasonable and logical procedure for experienced law enforcement personnel to process evidence at crime scenes. The purpose is to promote careful preservation of evidence and to permit a complication-free chain of custody. The promotion of more accurate evidence gathering serves the legitimate interests of all parties. Our conclusion

---

goal, it is not achievable and individuals may use a variety of phraseology to indicate their thoughts and beliefs. For example, one might say "I thought," "I believed," "it seemed to me," "it was likely" or even "I had a question in my mind." Such colorful idioms are a part of our linguistic culture. It certainly would be convenient if Marerro had used talismanic words such as, "I, as a reasonable and prudent person exercising the caution I would exercise in my own daily affairs, reasonably believed that the substance before me probably was marijuana." Laymen, fortunately, do not generally adopt such legalese in their daily speech patterns. The "question" in Marerro's mind constituted a sufficiently strong belief to compel him to disclose that belief to the police and seek their assistance in seizing the contraband.

[9] Particularly of note, Lepore never opened the second, closed cigar box that was sitting next to the open cigar box because Marerro could not have done so within the scope of his plain view observation.

in this case serves to further this reasonable practice."
Id. Additionally, we concluded that such a rule comports with the purpose of the plain view doctrine. Id. We noted that " '[w]here, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it.'
. . . [T]he defendant cannot be heard to complain that the second entry into the premises by the detectives affected her privacy interests. As the United States Supreme Court stated in *Illinois* v. *Andreas*, 463 U.S. 765, 772, 103 S. Ct. 3319, 77 L. Ed. 2d 1003 (1983), '[t]he plain view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy.' " *State* v. *Magnano*, supra, 271.

Our decision in *Magnano* involved the issue of an initial entry by a patrol officer and a subsequent entry by a detective. As yet, we have not had the opportunity to address the specific situation presented here, where the initial entry is by a firefighter and the subsequent entry is by a police officer. For purposes of plain view doctrine analysis, however, there is no rational distinction between the two scenarios. As in *Magnano*, the initial lawful entry by a government agent, who was entitled to seize contraband observed in plain view; *State* v. *Wilson-Bey*, supra, 21 Conn. App. 166–67; *Commonwealth* v. *Person*, supra, 385 Pa. Super. 213; eliminated the defendant's reasonable expectation of privacy and permitted the subsequent entry by a second government agent to do that which the first could have done. See *United States* v. *Jacobson*, 466 U.S. 109, 117, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) ("[o]nce frustration

of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now nonprivate information"). The fact that the government agent who made the initial entry was a firefighter rather than a police officer is of no legal significance to a fourth amendment analysis. Subsequent limited entry by Lepore constitutes no greater intrusion upon the defendant's privacy or possessory interest than did Marerro's entry and observation.

I believe that application of the rule adopted in *Magnano* to situations in which the initial entry is by a firefighter comports with the premise that underlies the plain view doctrine. I believe, moreover, that suppression of such evidence would elevate form over substance and would undermine three decades of state and federal precedent that has sought to infuse some logic and common sense into the exclusionary rule since its pronouncement by the United States Supreme Court in *Mapp* v. *Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). Furthermore, it would appear that no useful or beneficial purpose would be served by excluding evidence seized by a police officer who has stepped into the shoes of a firefighter. The entry and seizure by Lepore was limited to what Marerro observed during his initial lawful entry. Lepore's conduct was not a flagrant abuse of his presence as evidenced by the fact that he did not engage in a general search beyond the scope of Marerro's observation.[10] Suppressing this evidence will not encourage obtaining warrants, but will serve only to encourage the police to direct fire officials to seize the evidence. A firefighter's lack of skill in evidence gathering and the resulting broken chain of custody, however, will undermine the legitimate police

---

[10] If Lepore had exceeded the scope of his lawful presence by, for example, opening the second cigar box, that certainly would have been an unlawful search. The fact that he restrained himself from doing so demonstrates the lack of a flagrant abuse of his power. See *United States* v. *Green*, 474 F.2d

policies that we lauded in *Magnano*. *State* v. *Magnano*, supra, 204 Conn. 271. Even if the police do obtain a warrant, it will serve no beneficial purpose because the privacy that the warrant requirement protects already has been frustrated by the firefighter's plain view observation.[11]

Although we previously have not addressed the specific issue of an initial exigent entry by firefighters who observe contraband followed by a subsequent entry and seizure of the contraband by police, other jurisdictions have addressed this precise factual situation. The overwhelming majority of courts have concluded that the police may step into the shoes of the firefighter to seize evidence without first obtaining a warrant. See *United States* v. *Green*, 474 F.2d 1385 (5th Cir.), cert. denied, 414 U.S. 829, 94 S. Ct. 55, 38 L. Ed. 2d 63 (1973); *United*

1385, 1390 (5th Cir.), cert. denied, 414 U.S. 829, 94 S. Ct. 55, 38 L. Ed. 2d 63 (1973).

[11] The defendant asserts that if we fail to suppress the evidence seized by Lepore, we would be creating a new exception to the warrant requirement. He argues that "subsequent warrantless entries are only permitted when they are purposefully related to the emergency that authorized the initial warrantless entry." This clearly overstates the limitations of the plain view exception. The patrol officers who entered the defendant's home in *Magnano* did so to search for a burglar who was reported to be in the house. *State* v. *Magnano*, supra, 204 Conn. 262. We acknowledged that it was "undisputed that by the time the defendant had left the premises, the emergency had terminated" and that the detectives arrived after the defendant had been removed from the scene. Id. The detectives entered not to aid in the search for a burglar or to render aid to the victim, but for the express purpose of gathering evidence. Consequently, there is absolutely no merit in the defendant's contention that the subsequent entry may be limited only to the emergency purpose that permitted the initial entry. See *Michigan* v. *Tyler*, supra, 436 U.S. 508 (permitting firefighters to remain on premises for reasonable time to complete duties after fire is suppressed and upholding seizures made during that time); *State* v. *Bell*, supra, 108 Wash. 2d 198 (dismissing contention that exigency must last throughout duration of search and seizure). As did the patrol officers in *Magnano*, Marerro entered for an emergency purpose, to search for victims and ventilate the room. Lepore's subsequent entry, while firefighters were still lawfully on the premises, was solely to gather the evidence found in plain view by Marerro during his lawful presence.

*States* v. *Johnson,* supra, 524 F. Sup. 203–204; *Mazen* v. *State,* 940 P.2d 923 (Ariz. 1997); *People* v. *Harper,* 902 P.2d 842 (Colo. 1995); *State* v. *Loh,* 275 Mont. 460, 914 P.2d 592 (1996); *Commonwealth* v. *Person,* supra, 385 Pa. Super. 197; *Commonwealth* v. *Thornton,* 24 Va. App. 478, 483 S.E.2d 487 (1997); *State* v. *Bell,* supra, 108 Wash. 2d 193. Other courts have found no fourth amendment violations in analogous situations where one government agent has observed evidence of contraband and members of a different agency take possession without a warrant. See *United States* v. *Brand,* 556 F.2d 1312 (5th Cir. 1977), cert. denied, 434 U.S. 1063, 98 S. Ct. 1237, 55 L. Ed. 2d 763 (1978) (no warrant required when second group of police officers enter house after another police officer entered to assist officer who entered to render emergency aid and second officers observe evidence in plain view); *Steigler* v. *Anderson,* 496 F.2d 793 (3d Cir.), cert. denied, 419 U.S. 1002, 95 S. Ct. 320, 42 L. Ed. 2d 277 (1974) (no warrant required when police officer seized evidence of arson found by state fire marshal during warrantless investigation after fire was controlled); *United States* v. *Gargotto,* 476 F.2d 1009 (6th Cir. 1973) (warrant not required when Internal Revenue Service obtained evidence of gambling activity that had previously been seized in arson investigation by investigator and police officer).

A review of these cases supports the conclusion that the fourth amendment does not require suppression of the marijuana and cocaine seized by Lepore. In *People* v. *Harper,* supra, 902 P.3d 844–46, the Colorado Supreme Court was faced with facts virtually identical to those present here. A firefighter, searching for the cause of the fire, entered the defendant's bedroom. Having determined that the fire started in the mattress, the firefighter removed the mattress and discovered a bucket which contained "a green, leafy substance . . . which he suspected to be marijuana. [The firefighter] then summoned [two police officers] who had been outside

directing traffic, into the residence." Id., 843–44. The police officers observed the substance and summoned a police detective. The detective identified the substance as marijuana and seized the bucket. Id., 844. The court concluded that there was no violation of the fourth amendment because the firefighter and the police who stepped into his shoes were lawfully on the premises and the evidence was in plain view.[12] Id., 845.

In *Commonwealth* v. *Person*, supra, 385 Pa. Super. 199, firefighters observed drug paraphernalia "and a bag containing green matter" during the course of their lawful entry into the defendant's bedroom. The firefighters summoned the police from outside the apartment, and the police seized the contraband and drug paraphernalia. Id. The court concluded that "a fire[fighter] or fire marshall, who is properly inside premises in the course of his firefighting duties and responsibilities, may seize contraband or evidence of criminal activity other than arson which he inadvertently observes in plain view. Further, when contraband is observed in plain view by a fire marshall who is properly on the premises, he may summon a police officer who may observe and seize the contraband without a warrant." Id., 213. The court reasoned that "[i]t is only where a defendant's constitutional right to be free of unreasonable searches and seizures has been violated that suppression is required. There is no such violation where evidence of crime is inadvertently observed in plain view by a representative of the government who is lawfully in a position from which to make such observation." Id., 214–15. Similarly, under Connecticut law, Marerro could have seized the contraband and delivered

---

[12] Notably, the court concluded that the requirement that the evidentiary nature of the substance seized must be immediately apparent was satisfied by the *detective's* determination of probable cause. *People* v. *Harper*, supra, 902 P.3d 846; see footnote 5 of this dissent. The court made no analysis of the independent probable cause of the firefighter who initially observed the marijuana.

it to Lepore. *State* v. *Wilson-Bey*, supra, 21 Conn. App. 166–67. There is no reason to deny him the ability to summon a police officer to seize that which he could have seized.

In *State* v. *Bell*, supra, 108 Wash. 2d 193, the Washington Supreme Court concluded that the plain view exception excused the absence of a warrant when firefighters observed what appeared to be marijuana plants in the defendant's attic and summoned the sheriff's department to seize the plants.[13] The court was unpersuaded by the argument that "the sheriff's officers needed a warrant to enter the residence and to seize the property found by the fire[fighters] because they constituted a separate state agency." Id., 200. The court concluded that "[o]nce the privacy of the residence has been lawfully invaded, it is senseless to require a warrant for others to enter and complete what those others already on the scene would be justified in doing." Id., 201.

As noted in *United States* v. *Green*, supra, 474 F.2d 1390,[14] "[t]he purpose of a search warrant is to ensure

---

[13] Strikingly similar to the testimony of Marerro; see footnote 8 of this dissent; the firefighters in *Bell* stated that " 'I suspected that [the plants] were—chances are they were marijuana' " and it " 'appeared to be a marijuana-growing operation to me.' " *State* v. *Bell*, supra, 108 Wash. 2d 198. There was no evidence that these firefighters were experts in drug identification, nor was there any greater basis for their conclusion than for Marerro's belief that he had seen marijuana. The court expressly concluded that it was immediately apparent to these firefighters that they were observing contraband.

[14] In *Green*, the court concluded that no warrant was necessary when a fire marshall observed counterfeiting templates during his lawful presence in the residence, and subsequently contacted a Secret Service agent to make a positive identification and seize the plates. *United States* v. *Green*, supra, 474 F.2d 1390. Rather, the court noted that "[t]he facts of the case sub judice present a classic situation for application of the well established plain view doctrine." Id., 1389. The court reasoned that the fire marshal "surely could have removed the plates and carried them to the Secret Service's headquarters, or have handed them to [the agent] outside of the apartment. Thus, [the Secret Service agent] cannot be constitutionally tripped up at the threshold that he stepped across to make his confirmation and to take custody of the plates from [the fire marshall]." Id., 1390.

judicial authorization, in advance, of intrusions into constitutionally protected privacy. Where a lawful intrusion has already occurred and a seizure by a State officer has validly taken place as a result of that intrusion, the invasion of privacy is not increased by an additional officer, albeit a federal officer, who is expert in identifying the type of contraband discovered, to enter the premises to confirm the belief of the State officer and to take custody of the evidence. Once the privacy of a dwelling has been lawfully invaded, to require a second officer from another law enforcement agency arriving on the scene of a valid seizure to secure a warrant before he enters the premises to confirm that the seized evidence is contraband and to take custody of it is just as senseless as requiring an officer to interrupt a lawful search to stop and procure a warrant for evidence he has already inadvertently found and seized. . . . *The apparent conflict between the Constitution and common sense which the plain view doctrine has reconciled is the same misconception which we here seek to dispel.*" (Citations omitted; emphasis added.)

My research revealed only one court that has concluded that a defendant retains a reasonable expectation of privacy after fire officials have lawfully entered the premises and discovered evidence in plain view. The Ninth Circuit Court of Appeals in *United States* v. *Hoffman*, 607 F.2d 280 (9th Cir. 1979), required a warrant prior to entry and seizure by the police of the shotgun found by firefighters while suppressing a fire in the defendant's residence. *Hoffman* is decidedly a minority approach and its rationale is not persuasive.[15]

---

[15] In *Hoffman*, the court concluded that the officer had no exigent purpose for entering the premises and thus could not claim the plain view exception. *United States* v. *Hoffman*, supra, 607 F.2d 283. It did not address, however, whether the police officer could step into the shoes of the firefighters as do other courts that have addressed this issue. The court also concluded that the police officer's entry exceeded the scope of the firefighters' initial entry, not because his physical intrusion was greater, but because his pur-

Consequently, I believe that the vast majority of jurisdictions that have addressed this issue would agree that Lepore's seizure of the cigar box did not violate the defendant's fourth amendment right to be free from unreasonable searches and seizures. Marerro, an agent of the state, was lawfully present in the defendant's bedroom when he observed the substance that a reasonable and prudent person would have believed more probably than not was marijuana. He could have seized the contraband without first obtaining a warrant. Instead, he called a police officer to confirm his belief rather than unnecessarily intruding upon the defendant's possessory interest. The defendant cannot reasonably argue that he retained an expectation of privacy after Marerro observed the marijuana. Acceptance of such an argument would not further the purposes of the fourth amendment, and would have no rational relationship to the fundamental purposes that underlie the relationship between the exclusionary rule and the plain view doctrine, which relationship attempts to eliminate the absurd results that would follow from the arbitrary exclusion of all evidence obtained without a warrant. I would conclude that the trial court improperly granted

pose was not to give aid in suppressing the fire or to perform other firefighting duties. Id., 284. This is clearly not a proper assessment of the plain view exception. As previously noted, the justification of the plain view exception is that seizure of an item observed after a lawful intrusion by the state into the defendant's private domain does not violate the fourth amendment because the expectation of privacy already has been frustrated by the initial lawful entry and observation. *Illinois* v. *Andrea*, supra, 463 U.S. 772; *State* v. *Magnano*, supra, 204 Conn. 271. Furthermore, I believe that *Hoffman* might be decided differently if it were to arise today, in light of the United States Supreme Court's subsequent decision in *Horton* v. *California*, supra, 496 U.S. 138, that "[t]he fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement." It is no longer compelling, if it ever was, to argue that the purpose of the police officer's entry controls rather than the scope of the entry.

the defendant's motion to suppress the marijuana and cocaine seized by Lepore. I therefore respectfully dissent.